Good morning. Still. Still. And may it please the Court, my name is Ed Howard. I represent the appellants. I would like to please reserve three minutes for rebuttal. I'd like to begin, Your Honors, with what most troubled the trial court in this instance, and that is answering the question, what happens if we win? And most specifically, I'd like to address the question of what happens if we win related to the question of issue preclusion in the dependency court. Well, what would happen if we get a declaration from the district court that says that the caseloads imposed by the defendants on Sacramento County dependency attorneys is too high? The impact of that on current impact on that, on current dependency proceedings in Sacramento County, is nil for younger purposes. Younger, as this Court has twice explained, both in Green v. City of Tucson and in Wiener v. San Diego, younger really only aptly applies when a Federal plaintiff is seeking to use Federal court collaterally to attack some case that is already live, some claim that is already live. Or cases. Or cases, Your Honor, that is already live and going on in the State court. Well, aren't the dependency proceedings ongoing? The dependency proceedings are ongoing. But there is currently, as we sit here, as I stand here and you sit here, there is no dependency court that is considering the question of the constitutionality or the lawfulness under Federal or State law of the caseloads imposed by the defendants in Sacramento County. But that doesn't matter. It doesn't the issue doesn't have to be the same. The question is whether or not the Federal decision that's made will impact ongoing court proceedings. It doesn't have to be the identical issue to impact ongoing State proceedings. If a criminal case is in State court and it comes to Federal court on an entirely different issue than is existing in State court, Younger still countenances us to abstain. So it doesn't have to be the same issue. I'll quibble a little bit with your use of the word issue. Okay. But on the general principle, I could not disagree more. And I think the unanimous authorities are on the other side. The question for Younger, again, as explicated in the City of Tucson and San Diego, is to protect a State judge currently adjudicating a matter before him or her. Not any matter. Because we know from Green v. City of Tucson, we know from the New Orleans Public Services case, that parallel State proceedings involving identical plaintiffs and identical issues, identical plaintiffs and identical issues, that's not a ground for Younger. If they only – and that's why I quibble with your definition, because it's interfering with ongoing State proceedings. But Younger – yeah. But Younger – well, interference is no longer purely the standard. In two remarkable en banc decisions, this Court refined the question of what interference means, and in addition – refined it additionally in Ameris Sorsbergen v. Roden. It's not generic interference under this Court's jurisprudence. It is specifically whether or not the State – the Federal action will have the result of enjoining, either practically or on its face, a State proceeding. But if you look at the authorities about what that means, it can't mean everything, Your Honor. Because if it means every possible plaintiff – But it has to mean something. Yes, Your Honor. And my challenge is to get to you – is to get to that something. If you don't mind me going ahead, let's assume that you – let's start with your assumption that you're going to – you win, you get a declaration. And you've crafted this fairly strategically in the sense you haven't asked for an adjunction or to do anything. But in the real world, isn't it fairly obvious that the State proceedings and dependency courts will have to be challenged one by one, using this as res judica? How do you – just, if you don't mind, explain to me how you see this playing out if you win. What do you mean, if we were to prevail? If we were to prevail, if you – if the case goes forward and you get a declaration, as you've sought. Right. Will you explain to me how you foresee this playing out in State court? Sure. It will play – well, in State court – well, that's actually – respectfully, that's almost a different way of asking what Judge Rawlinson was asking. Yes. There's two different ways that this can play out. The way that it will play out when it is identical to whenever you sue an executive branch agency challenging a particular policy. We're asking about this specific lawsuit. Yes. This specific lawsuit lodged against no State judge that seeks to enjoin no particular proceeding against administrative defendants. What will happen is exactly what the D.C. Circuit said would happen in the family division of trial lawyers. When you sue to challenge – when you sue to challenge a particular rule or a custom of an executive branch defendant, they change the rule. They change the practices. In this instance, if we had a declaration, especially given who our honor defendants are here, we expect that a declaration saying that the caseloads that they are currently imposing on Sacramento County's dependency lawyers would cause them to improve those caseloads. If – so that's what we expect fully to happen. And how about if they don't do enough? Are you going to go into court? If they don't – if they don't do enough, if there's no difference between the administrative office of the courts and the judicial counsel, please do not be distracted by the titles here. They are operating executively. And if they were to disobey a federal district court order and do literally nothing, the same remedies that would be available to us if we were suing the Department of Social Services or another executing department or branch of government would be available to us. But I really want to go back to your question because it, in my opinion, decides the case. If you view abstention through the prism that was articulated in Tucson and in San Diego and you – and you – and we look through it and we say, ah, these cases only really aptly apply when there's a collateral attack, then all of the abstention cases, including those pointedly the child welfare-related ones, all harmonize. An example, 31 foster children, a case heavily relied on by both the district court and the defendants. Well, what was happening in that case? In that case, the circuit court held that the claims pled, that the claims pled would have required potentially different results, not on any issue, but on different results on the very core of what dependency judges in Sacramento are doing right now as we speak, deciding where kids are going to live, where they're going to be educated, and et cetera. The same thing in Lori Cue. In Lori Cue, Judge Patel observed that what the challenge was was going exactly to the things that dependency courts are doing today, every day, such that, you know, the potential of conflicting rulings between a Federal judge and between the State judge. Now, you've been through that. Well, how can, assuming you get the relief you want, it has to result in the removal of attorneys from pending cases, doesn't it? No. Why? They're overloaded. Your allegation is they're overloaded. They have too many cases. So to achieve the results you want, new attorneys are going to have to take over existing cases. True? Yes, but it is the route by which they obtain, they take over existing cases that is critical for younger abstention. If what we have is simply under New Orleans Public Services and other authorities, a challenge to something that is not judicial in nature, but executive and legislative. But practically speaking in the real world, the proceedings will change in State court. We hope so. Yes. And so what I'm driving at is, you didn't ask for an injunction here. You didn't ask for reassignment. And I think probably deliberately and strategically to avoid abstention problems. But if the same result obtains, where there's a declaration of, that the procedure is unconstitutional and you have to go back to Federal court to enforce it, don't we ultimately have to confront those issues? No. Why? I mean, here's what happens. Let's say you win. The counsel says we can't afford it, which is not, you know, it's certainly possible in California. You go back to Federal court to order them to do that, don't you? That's your remedy. If I were to go back to Federal court and ask the Federal court to issue an injunction against the AOC after a declaration, because they haven't done anything after a declaration, there is nothing offensive to Younger about that any more, any more than if I were to have made the same case, if the caseworker, if the attorneys happened to have been lodged within the Department of Social Services in California. This would not be a question. The question of whether or not there would be a Younger issue simply wouldn't arise. It only arises here because that executive function happens to reside in the administrative office of the courts. It's not. It arises because the effect of the ruling may play out in the legal proceedings. Okay. Because here's my concern. If we declare that the process as it exists is unconstitutional, that's a ready-made ineffective assistance of counsel claim for every single one of those cases. And so it affects those proceedings in that way, because all of those proceedings can be undone on the premise that there has been a constitutionally-informed system that led to whatever decisions were made in those cases. So there's a legal and a practical. Well, there's a purely legal and there's a mixed legal and practical answer to that question, Your Honor. The practical one, as we point out in our brief, reply brief on pages 6 to 9, is that the assertion that even one, that even one previously adjudicated manner in the penancy court is ifso facto going to be subject to opening and reversal because of this declaration is simply inaccurate as a matter of law.  As we explain in those portions of our brief, there are impediments that exist currently to being able to reopen a case. Let me give you the best and most telling example. The cases that are ongoing, not the ones that are closed. The cases that are ongoing. If we go to the ongoing cases, the question under Younger is never whether or not under – is never whether or not a parallel proceeding, a Federal proceeding could have an issue preclusive effect in State court. The cases are legion. Not issue preclusive. I didn't say it was issue preclusive. I just said it affected the ongoing dependency proceedings because it gives a built-in and effective assistance of counsel claim. Well, I don't know how it would be built in without any kind of issue preclusion. If you're arguing that – It doesn't mean you're going to win. It just means that you have the argument. That's why it's not issue preclusive. But the winning is critical. The winning is critical because when you look at all – truly all of the Younger cases, whether in the child welfare cases or otherwise, the critical analysis is always whether or not you are robbing the current State judge of the ability to decide a live controversy currently before them by collaterally and cleverly attacking it through Federal court. That's what Younger is all about. It protects the adjudicator in their adjudicating functions on matters that are before them. That's why in Roden, this Court said unequivocally that a potential conflict, a potential conflict between two cases has nothing to do with Younger. Do you have the same argument with O'Shea? I have exactly the same argument with O'Shea. O'Shea is just Younger by long division. O'Shea – so one of the most obvious way that you can stop an ongoing – a State court from adjudicating a matter currently in front of them. The most obvious way is to tell – is to have a Federal court say stop. But the long division way is to simply interpose the Federal court as sort of an intermediate appellate court, whereby the State courts in the idiosyncratic decisions have to get sort of a good housekeeping seal approval from the Federal court. And that's my concern with the ruling in this case, that the Federal court becomes the substitute for the administrative committee of the State and we're running the State court dependency system. And that's – that's my hesitancy about wading in to this arena. That was clearly the hesitancy of the district court. It is uncalled for under Younger and O'Shea abstention. Not to – inferentially, we know this to be the case throughout the country because of the footnotes in our brief and our friend of the Court, Children's Rights Brief, that there are some 20-odd Federal cases all involving child welfare all over the country. But most directly, take a look at how some of the other circuit courts have dealt with it. In Ray Joseph A. from the Tenth Circuit, I believe, cited by, I believe, the district court, also by the defendants. That's a good case for us. First, it's a good case for us because it came by way of a consent decree, which means the plaintiffs got to litigate their case in Federal court for three years prior to the consent decree being issued. But if you take a look at the way that that court parsed out the consent decree, one part of the consent decree was found to violate Younger slash O'Shea. And that was the part that constrained the ability of the department to offer recommendations to the judge. That's also just Younger by long division. If you can't provide recommendations to the judge, it's another way of skewing the particular ruling in a particular case. Right. But here, leaving the judicial counsel aside, the only effective remedy, it seems to me, is to compel State judges to appoint new attorneys, which interferes with the ongoing case. But that's the only way you can reduce the caseload to the areas that you can say, theoretically, I'm going to reduce the caseload. But if you're going to have any impact on ongoing cases, you have to remove the attorneys from the case, which is in the State judge decision. You have to add. My time has expired. May I answer your question? Sure. You have to add additional attorneys to redress the problem of too few of them. But then you have to replace the attorneys that are currently ongoing to have cases. You have to add. Well, you have to at least give them some help. You add the number of attorneys. That's true. Yes. But there's no relief unless you replace the attorneys who have cases now who are overburdened. Yes. And that is the interference with the State proceeding. But here's the critical point about Your Honor's use of the word interference. I think we can all agree that a, especially a court sitting in equity, ought not apply a rule in the sense that there's something wrong with the application of a rule if one applies it in such a manner so as to defeat the purposes for which the rule was created. And respectfully, analogizing interference, analogizing an interruption in State court proceedings which is designed to stop them, i.e., in Joseph A., or to control the actual rulings of a particular judge, as in Younger and as in Morris and all of the cases, analogizing that kind of interference to an interference which does the exact opposite, which would enhance the ability of the court here to be able to hear arguments from counsel and render better and fully informed decisions. The fact that we're applying this rule in a way that doesn't distinguish between Joseph A. or Laurie Q. in our case is a tremendous problem. It's the same with the question of whether or not we can bring our case in dependency court. The idea that we're going to save and preserve dependency court adjudications under Younger, and that's what it's about, it's about the ability of a judge to be able to rule on matters that they have before them today in Sacramento County. The idea that we're going to save that by channeling Section 1983 cases involving two of the world's largest law firms into those courts, again, the interference matters. The precise claims matter. That's why in all of the child welfare cases, in all of the child welfare cases, what you see is courts deciding to abstain when the thing that seeks to be changed by the Federal court goes to things they're doing right now. Roberts. I understand your argument. Thank you. Your time is up. Thank you. Thank you for your questions. Did you leave some papers up there? Those are mine. Oh, those are yours. Okay. Please, Your Court, my name is Robert Nave. I'm appearing here on behalf of the defendants and the appellees. First, as a sort of a bookkeeping issue, to make sure that we have our caption right, because we've had a little bit of a problem with the clerk's office, that Chief Justice George is no longer the Chief Justice. I'm aware of that. We'll take care of it. Just checking. If I may, Your Honor, there are actually, Your Honor, three issues that you need, I think, to decide. The first is, what's the standard of review in this case? Then the second, do you abstain under O'Shea, and do you abstain under Younger? The court looked, the district court looked at those issues separately. They should be looked at separately. And so let me, if I can, very briefly address the first issue. That is the standard of review. We've explained in our brief that there really are different standards. It is not true that O'Shea is the same as Younger. If they were, you wouldn't have O'Shea, you wouldn't have courts relying on O'Shea. O'Shea is an extension of Younger, but there are differences between them. The most important of which is just O'Shea doesn't even require, doesn't even require an ongoing proceeding. If something could in the future involve, you know, administration of a State court or interfere with the administration of a State court, that's when O'Shea becomes involved, number one. Number two, if you look at the Yu case, which is cited a lot by the parties, you'll see that in that case, this court penned the issue as whether in its discretion it should decide to abstain. And as opposed to Younger, where if you have these four factors, which were not even considered in most O'Shea cases, and certainly weren't considered at all in the Yu case, you have to abstain, which is why that's de novo review. So right out of the gate, you've got to make sure, at least our view is, you have to make it very clear that there is a different standard of review for these two cases. O'Shea is not Younger and vice versa. And so when you look at these decisions, you have to sort of evaluate them differently on appeal. That's the first point. Second point, what about Younger? The Court is, I think, right to be asking about what the impact is. The problem is, in the briefs and the way this has been teed up, is that we've taken snippets out of the Gilbertson, Judge Reimer's opinion in Gilbertson, which is a wonderful opinion because it goes through all the cases. And what we get out of it from the appellants is that the interference has to, quote, be like an – enjoin or be like an injunction. But that misses the point of what Gilbertson was talking about and the cases that Gilbertson is citing, primarily the Samuels v. Mackle case, which is a United States Supreme Court case. And in Samuels, what the issue was, was when – it was the same time as Younger, by the way, decided the same day. What's the difference between a complaint for injunctive relief and a complaint for declaratory relief? And what the court, Supreme Court, says is they really are the same in the vast majority of cases. And the reason that they're the same is because, one, of this enforcement issue that you've – the Court has already identified. The second is the preclusion issue, which is not parallel proceedings, but it's a comedy concept that because you're supposed to, in these types of cases, defer to the State courts and not interfere with the State court proceedings, that you are taking – you are excising an issue that should be brought to the State courts first, bringing it into Federal court, and leaving the State court with nothing. And I think that segues into a question I have. I don't quite understand how the dependency courts could entertain this kind of a suit. It's a very good question, Your Honor. The answer is they can. Well, three points there. Is there a case that you can find that where a dependency court has certified a class? Well, those are – I can answer that. That's a separate question, Your Honor. So let me, if I can, address the first, because it's important. The statutes – we all understand that dependency courts are sitting superior courts. They're not some separate group of people. The judges are superior court judges. No, but they have statutory authorities. But they're limited. They're the area that they decide is a limited area. They are, except what are we talking about here? We're talking about caseloads. And you know that the statute that grants the authority to the dependency courts specifically grants the authority to the judge to, one, appoint the judges, the attorneys, two, pay for the attorneys, three, monitor their performance, and, four, remove them for cause if they're not performing. So they have the authority in front of them. So the question, Your Honor, is whether there is the ability to order the judicial counsel to do anything. I'm sorry, Your Honor? Missing from that list is the ability to order the judicial counsel to do anything. The question, Your Honor, in these cases is whether there is the ability of the State court to try the issue at hand. The issue here at hand is whether the caseloads before the very courts that we're talking about here are so high that counsel is ineffective. And the judicial counsel can't do that. I grant you, you can try it in the individual case on whether counsel is ineffective. But that's not the relief sought here. The relief sought is a systemic class action injunction, declaratory judgment, as to the administrative agency. Now, so my question to you, and I think you have to do this. On the class action case? Yeah. Okay. So you have to do this. Dependency courts, yeah, but dependency courts. I think you can see. Dependency courts can't certify a class. Never said they could, Your Honor. The question, though, is this. Let me get there, because I can answer your question. It's, again, a comity concept. You remember there's some of the Supreme Court cases talk about the fact that if the case is complicated, and some of the district court opinions go that way, that's a reason not to have them in the Federal court. You ought to put them back. You ought to abstain and let the States deal with it. But here's the issue. If you look at, and you ought to take a look at it, Your Honor, Judas v. Vail, United States Supreme Court, O'Shea itself, and Traynor. I know you want to get your point across, but there's a specific question that we have. Could this class action lawsuit be litigated in State court? In State court, in dependency court, there is no case saying that. I didn't say dependency court. I said State court. Yes. It could. I couldn't answer the question for dependency court, but to get back to the point I was trying to make, Your Honor, all these cases, because of the comity concern, they then say you don't even have to go there. Let me interrupt you. Then you can interrupt me. I think you're conceding the point and arguing a different one, but I want to make sure that I understand your answer to the first one before we pursue the second one, which is this case could not be litigated in dependency court, this specific case, the allegations. I can't specifically say that there is authority in the dependency courts to try a class action. That's not, does not appear to be within the statutory authority of the court. Or is it within the, let's say it's just a representative suit to compel the State to provide more attorneys. Can that be tried in dependency court? Yes. Do you think that the dependency court has that broad authority to compel your client, the current Chief Justice, to fund people? Peabody v. Jones is the case that discusses this issue, Your Honor, and it's interesting because if you look at the footnotes, they're dealing with this case because the courts abstain. So this is now a State court case. And the issue in that case is if counsel is doing what counsel is supposed to do in reporting, I can't handle this case anymore. No, I understand that. Then the court has the authority to say hire somebody else, and that's what the Welfare and Institutions Code gives us. That's not the posture of this case. The question was if the posture of this case was presented, you know, not in the case, but in the context of the dependents, the wards of the State saying we're not getting effective representation because the caseload is too high, could the dependency court entertain that suit? Yes. That's the point of Section 317 and 317.5. That's my point. There is a code section and also then rules of court, which also have the force of law, that require adequate caseloads. If someone complains and the dependency court were to find that the caseloads were too high, the dependency court would essentially remove for cause the attorney. But one at a time. It would be one at a time. That's not the posture of this case. In other words, your argument is that you need 5,100 separate motions to remove attorneys to grant the same relief that they're asking for in one suit. True? Or 2,500. I don't care. It's thousands of cases. The answer is yes. But then if I could answer your first question was, do you, is that, does that, the absence of a class remedy mean that you don't have Younger or O'Shea abstention? And that's my comity point. What the courts say, and I gave you the Supreme Court cases and then there are several also court of appeal cases, several out of the Tenth Circuit that are explicit on this, there is no requirement for the adequate state remedy that it be asserted on a class-wide basis. It doesn't have to be the exact same remedy that's available in Federal court. It has to be a remedy. For comity. Right. I get your point. Yeah, because you're referring it down. You're saying, look, we're not going to get involved. There may become a point someday where you might under some set of facts have to intervene. But from a comity standpoint, we have to defer. The absence of a particular type of remedy, and we've cited the cases in our brief, and the fact that Judas, O'Shea, and I don't remember the name of the other case, Traynor are all class actions. And in all three of those cases, they don't ask, now, is there a state class proceeding? In all three of those cases, the U.S. Supreme Court says, is there a remedy for the plaintiff? Because we defer to the state courts and we choose a system of judicial federalism, which is what our case is about, that defers. And so we're not going to assume the absence of a remedy. And by the way, there's no allegation in this case that any such challenge has ever been made, and the Tenth Circuit, when it's looked at this issue in cases that we've cited, have said under Pennzoil, if you haven't tried, you don't have really sort of standing to make the claim that you don't have a class proceeding. So I understand the point. But the more fundamental point, it seems to me, for this Court to understand, is that the Welfare Institutions Code and the rules of court, both of which have the force of law, give the dependency judges the authority and the obligation and the responsibility to monitor the caseloads of the attorneys. The attorneys have ethical obligations to report to the court if they believe that their caseloads are excessive. And under both of those scenarios, if the court finds that there is a reason to remove the attorney, the court can. And they need to know. One by one, case by case. That's right. And then I'd just suggest you read Jones, because that's the issue. No, no, I understand. I read it. I understand. I understand your point. I understand your concern, Your Honor, but we're talking here younger abstention. And that's – those are the rules and how they've been adopted by the Supreme Court. So there is – and you can see there is no current State proceeding in which this issue is raised. I can – to be clear, is there a State proceeding where a class claim could be presented before the dependency court? No, pending now. No, there isn't, no. Has the plaintiff tried? No. Which, again, is a Pennzoil issue, it seems to me. So, Your Honor, the – if I could, then, to the second point, where the – I think there was a claim this morning that there's no interference to the dependency court proceedings because there is no challenge. And that's not the point. The point of asking, is there interference, is not what particular issues you're talking about. It's asking, what is the effect does the Federal lawsuit have on the State proceedings? And in this case, as I think one of your – one of the panel's questions pointed out, to the extent that this case tees up a caseload equals ineffective assistance of counsel claim on Federal and State constitutional statutory grounds, for the court to get anywhere near finding in favor of the plaintiffs, the court is going to have to find some type of violation. And the minute the court finds that the dependency system is in itself constitutionally invalid, I submit that that does stop the dependency court cold. And that goes into this issue of, then, what kind of interference do you need? Gilbertson goes into that at length. And it seems to me that this case is a textbook example of the type of interference that Gilbertson was speaking to. Chris, we really don't know yet. I mean, that's the – that's the part of the interesting part of the case. The plaintiffs are basically saying, look, we are not going to interfere with ongoing. We are not going to ask for a remedy that will cause the system to shut down. We're taking a more nuanced approach. We want a declaration. And then we're going to go piecemeal, one at a time, to do that. But we don't know either way. Either from your perspective, whether your parade of horribles will occur, or from their perspective, whether this is going to be a measured, welcomed by everyone decision by the district court. So why not let it play out in the district court first? Because, I think it's Lucky, the Lucky Five, that finally raises this point. You do it now. First off, all of these cases, all of the Supreme Court cases, do it at the front end. So it's not as if there's not precedent at the Supreme Court level. No, I understand that. But what Lucky says is, why would you wait if, at the end of the day, after you've gone through and expended a lot of State funds from our standpoint and how much from the plaintiff's standpoint, to then decide, oh, yeah, this does have those problems. We now have to abstain. So if you're talking about what's efficient and what's not, what the courts have said is, to avoid, I think, the unfortunate circumstance, all of the cases say, number one, you have the ability to look and make reasonable choices to try to decide what you think is going to happen. You have to take what the complaint says is true, but this complaint gives you that. And as the corollary of that is, you then can't say, well, the plaintiffs want us to wear judicial blinders, which is what, especially after appeal. To be clear, by the way, there was a request for injunctive relief in the trial court. That was before the judge and then that was taken out. So you can't say to the court, wear judicial blinders. We don't want to. We're not saying we want that. But what the court has to ask is, what's the practical effect of the order that they're seeking? And the questions that you had of appellant's counsel went to that issue, and I thought that was actually the correct way to be looking at it. Let me ask you one other question. I assume that if the case goes forward, the State is to take the position that the caseload criteria is adequate and constitutional. Well, Your Honor, there's a lot that's not in the record about that. No, I'm just asking for your general position. I just don't know. Our position would be that, that. Do you intend to defend us on the merits if it goes forward? We would defend it on a case-by-case basis, I think, Your Honor. We would not do what the you defendant did, which is let's do it by statistics. I don't know how you do that in a case like this. But if it's allowed to go forward, you have to defend it the way it's pled by the plaintiffs. So you could defend it on a case-by-case basis. Well, the plaintiffs allege that because the attorneys are overloaded, that they are not effectively representing their clients. I don't know how you do that except to say, let's look at the cases, tell me which ones you think they are, and what's wrong with them. Judge Damrell made that point when he was talking about what the factors are. You know, and how do I have to look at this? Do I have to assume it's 180 cases for everybody? Is it all the same? And I'll posit to you that an effective, experienced, you know, dependency lawyer who has been practicing for 20 years can probably handle 500 cases, as opposed to someone who is fresh off the boat from law school. So I guess the answer is yes, you intend to defend on the merits. You have to defend on the merits, but it has to be on the case-by-case. I don't know how I should do it. I'm just asking for the State's position. I didn't want to hear your strategy. But I'm interested. Thank you for your question. Thank you, Your Honor. We'll hear rebuttal. Thank you, Your Honor. Just a few brief points. First, on the ability of dependency courts to hear cases like this one. It's not just class actions. Literally every authority in this circuit to ever look at the capacity of dependency courts to handle systemic cases like this one has said they cannot. I cite you to LaHaye v. Contra Costa County, Laurie Q v. Contra Costa County, and this Court's decision in L.H. v. Jameson. One of the things – the other thing that I want to briefly talk about is O'Shea. Bonner v. St. Louis in the Eighth Circuit and Lucky III v. Miller both say that O'Shea is basically just younger by long division. The same standard of review ought to apply. Finally, I want to return to the theme of my opening. There is no case that I am aware of or that has been cited that finds abstention on these facts. No case. Every single one of the child welfare cases where there has been abstention has held abstention because the Federal action one way or another would have changed the dependency rulings. Where's the kid going to live? What drugs is he or she going to take? Whether or not, you know, there's psychotropic – psychologist issues. Every single one of the child welfare cases, including Laurie Q, including 31 foster children, including Joseph A., every single one of them holds that that constitutes an ongoing proceeding under Younger. And the answer is it does, because as Judge Patel called it, that's the heart of what dependency judges do, is make those decisions. In Joseph A., for example, after considering the provisions of the consent decree, and hearkening to your question about whether or not you ought to wait for the district courts to maybe suss this out, the Court specifically said that the portions of the consent decree relating to the training and the capacity of social workers would likely not suffer Younger abstention, and foreshadowed that for this Court. So – or for – as a part of its decision. Our response, basically, is the response that I mentioned in Green. And every practice guide says, you're not supposed to do this, and I'm going to do it. In – this Court said the requirement, meaning Younger, ordinarily, although not always, and it cites DePenzoil, and I'll talk about that in a second, restricts application of the Younger doctrine to circumstances in which the State court proceeding is an enforcement action against the Federal court plaintiff, and is not met simply by the prospect that the Federal court decision may, through claim or issue preclusion, influence a result in State court. In this instance, a case that has been brought by us against an executive – a systemic case, anything less than that, the cure is worse than the disease. 5,100 different disruptions in the name of preventing disruption. Abstaining in a case that's designed to increase the information available to judges, again, in the name of following cases that have held that not providing information to judges is what requires the abstention. I'm almost out of time. You're way over your time. I am almost entirely out of time. I will stay over your time. No, you're way over your time. I saw the – you know, I saw the little ticker, and I was, is that really it? So I will have – I will budget a close note with one sentence, with one sentence. I would be remiss if I did not mention my clients. There is, as this Court said in Goldie, you – you – abstention is particularly a weighty matter when considering Section 1983. There is no population in this country that needs Section 1983 more than my clients. Not only are they children, their entire lives, everything about them, is steered and will be determined under the color of State law. Thank you. Thank you. Thank you both for your arguments. The case just heard will be submitted for decision and will be in recess for the morning. All rise.
judges: Carney, Thomas, Rawlinson